# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                   Civil No. 12-CR-183 (SRN/AJB)

                                                                    ORDER

v.

Michael Allen Smith,

             **Defendant**.

_____

Richard A. Newberry, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff

Shannon Elkins, Office of the Federal Defender, 107 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Defendant
_____

SUSAN RICHARD NELSON, United States District Judge

       This matter is before the Court on the Report and Recommendation ("R&R") of Chief Magistrate Judge Arthur J. Boylan dated September 20, 2012 [Doc. No. 35].  In the R&R, Chief Magistrate Judge Boylan recommends that this Court deny the following motions:  Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 18], Defendant's Motion to Suppress Statements, Admissions and Answers [Doc. No. 19], and Defendant's Motion to Suppress Eyewitness Identifications [Doc. No. 20].  Defendant filed timely objections to the R&R [Doc. No. 36].  The Court has reviewed de novo those portions of the R&R to which Defendant objects, as required by 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(3).  Based on that review, the Court adopts Chief Magistrate Judge Boylan's recommendations and denies the Motions to Dismiss.

## I. BACKGROUND

Defendant was charged by way of indictment with one count of being an armed career criminal in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e), and one count of possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871. The factual background of this case is set forth in the R&R, which the Court incorporates herein by reference. Briefly, Minneapolis Police officers received a dispatch reporting two separate incidents of armed robbery in the area of 26th Street and Penn Avenue in North Minneapolis. (R&R at 1-2 [Doc. No. 35].) The two female victims of the first robbery described the perpetrators as three black males wearing black hoodies. (Id. at 2.) One of the perpetrators carried a silver pistol. (Id.) The male victim of the second robbery described the perpetrators as three African American men: one was chubby, approximately 5'11", wearing a dark blue Twins jacket, and carrying a silver revolver; another, 5'8", in his 20s, held a gun to the victim's torso; and the third stood approximately 20 feet apart from the other two. (Id.)

A police officer responding to the dispatch observed a person meeting the descriptions, walking approximately one block from the location of the robberies. (Id.) When Minneapolis Police Officer Lessard shined a spotlight on the man, the man changed direction, walked into a vacant lot, and dropped a long gun that he pulled from his pants. (Id.) Officer Lessard ordered the man to stop, but he refused and fled. (Id.) Following a chase and search, Defendant Michael Allen Smith was apprehended. (Id.) Another Minneapolis Police Officer, Officer Warzinik, located the abandoned firearm, along with a nearby bag of ammunition. (Id.) No contraband from the robberies or weapons were found on Defendant's person. (Id.)

Minneapolis Police Officer Dubuque spoke with the male robbery victim, who indicated

that he could identify the two men who had been near him, holding guns. (Id. at 3.) Officer Dubuque informed the victim that a possible suspect had been identified, but it was not necessarily one of the persons who robbed him. (Id.) The victim agreed to participate in a show-up identification procedure and stated that he would not identify the person unless he was sure of his identity as one of the perpetrators. (Id.) Officers transported the victim to the suspect's location, about a block away, where the victim remained in the squad car while officers illuminated Defendant with a spotlight. (Id.) Without hesitation, the victim stated, "that's the guy, that's the guy that took my money," further identifying him as the second man he had previously described, who had held a gun to his torso. (Id.) The victim indicated that he was one hundred percent sure of his identification. (Id.) Defendant is 30 years old, 5'10", and was wearing a dark gray sweatshirt and shiny, silver-colored pants. (Id.) The two female robbery victims were unable to make a positive identification of Smith as one of the perpetrators. (Id.)

At Defendant's suppression hearing, the Government's sole witness was ATF Special Agent Angeline Portel. (Id. at 4.) Special Agent Portel was not involved in Defendant's apprehension and arrest, but became involved as the case agent approximately one month after the offenses occurred. (Id.) She reviewed the police reports, wrote a summary report, spoke with Officers Lessard and Warzinik, and also spoke with Minnesota Bureau of Criminal Apprehension ("BCA") forensic scientists and Bureau of Alcohol, Tobacco and Firearms ("ATF") personnel who had conducted firearms examinations. (Id.) The underlying reports were disclosed to defense counsel in discovery. (Id.) Defendant objected to Special Agent Portel's hearing testimony on hearsay grounds. (Id. at n.2.) Chief Magistrate Judge Boylan overruled the objection and Special Agent Portel's examination proceeded. (Id.)

Defendant asserts two grounds of objection to the R&R: (1) Chief Magistrate Judge Boylan's ruling on the admissibility of hearsay testimony from ATF Special Agent Angeline Portel; and (2) the recommendation denying the Motion to Suppress Eyewitness Identification. (Objections at 1, 6 [Doc. No. 36].)

## II.    DISCUSSION

### A.    Hearing Testimony

Relying on <u>United States v. Boyce</u>, 797 F.2d 691, 693 (8th Cir. 1986), Chief Magistrate Judge Boylan determined that there was no due process violation in admitting Special Agent Portel's testimony, because courts may rely on hearsay and other evidence at a suppression hearing, even though that evidence would not be admissible at trial. (R&R at 5 [Doc. No. 35].) The magistrate judge was further persuaded that because the pertinent evidence given by the witness was provided to her in reports and in discussion with officers who were directly involved in the arrest and investigation, there was no reason to seriously doubt the veracity of the information, even though it was hearsay. (<u>Id.</u> at 6.) Assuming that the appropriate witnesses testify at trial and are subject to cross-examination, Chief Magistrate Judge Boylan found no violation of Smith's right to confront witnesses absent from the suppression hearing. (<u>Id.</u>) (citing <u>Boyce</u>, 797 F.2d at 693-94.)

Defendant objects, distinguishing <u>Boyce</u> from the facts of this case because the Government's exclusive reliance on Special Agent Portel limited the Court to hearsay evidence on all of the issues before the Court. Under circumstances where the witness merely testifies to what she has read, Defendant argues that cross-examination is "essentially a useless tool." (Objections at 9 [Doc. No. 36].)

As the magistrate judge found, the right of confrontation in pretrial suppression hearings does not apply to the same extent as at trial because "'the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself.'"  Boyce, 797 F.2d at 693 (quoting United States v. Raddatz, 447 U.S. 667, 679 (1980)).  "Although not admissible at trial, the district court may rely on hearsay evidence at a suppression hearing."  United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008) (citing Raddatz, 447 U.S. at 679)).   This is because the Sixth Amendment's right of confrontation is considered "a trial right."  Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987).   In Crawford v. Washington, 541 U.S. 36, 59 (2004), the Supreme Court held that the use at trial of out-of-court testimonial witness statements is barred by the Confrontation Clause, unless such witnesses are unavailable at trial and the defendant had the prior opportunity to cross-examine the witnesses.

Such hearsay testimony may be admitted in a suppression hearing if the court finds no reason to doubt that the out-of-court statement was made, and there is no reason to seriously doubt the statement's truthfulness.  United States v. Maza, 93 F.3d 1390, 1396 (8th Cir. 1996). In Maza, the Eighth Circuit affirmed the trial court's admission of hearsay testimony from an agent who was not involved in two stops of the defendant's vehicle.  Id.  The Eighth Circuit noted that the defendant cross-examined the agent and the district court found the agent's testimony credible.  Id.  Moreover, the defendant could point to nothing that cast doubt on the district court's finding.  Id.

While Defendant argues that this case is distinguishable in that all of the testimony in the suppression hearing came through Special Agent Portel, the Court finds no reason to doubt her testimony, particularly as it was obtained from discussions with officers on the scene and her

review of applicable reports.   Moreover, as Chief Magistrate Judge Boylan noted, "presuming that the appropriate witness(es) will testify and be subject to cross-examination at trial with respect to relevant matters, there is no violation of the defendant's right to confront the witness who was absent from the suppression hearing."  (R&R at 6) (quoting Boyce, 797 F.2d at 693-94.)   Therefore, the magistrate judge correctly concluded that Special Agent Portel's hearsay testimony was admissible, and the R&R is adopted as to this issue.

Defendant does not object with any specificity to Chief Magistrate Judge Boylan's recommendation that his motion to suppress statements and motion to suppress evidence obtained as a result of search and seizure be denied.  However, to the extent that he makes any such objection based on the exclusive use of Special Agent Portel at the suppression hearing, any objections are overruled, for the reasons set forth above.   As to Defendant's motion to suppress statements and to suppress evidence obtained as a result of search and seizure, the Court finds that the magistrate judge's report is well reasoned and correctly applies the law to the facts of this case.  Therefore, the Court adopts the recommendation of the magistrate judge and denies Defendant's suppression motions related to statements and based on search and seizure.

### B.      Show-Up Identification

The magistrate judge found that, under the totality of the circumstances relating to the show-up identification, the out-of-court identification was not impermissibly suggestive; and even if it was, it was nonetheless reliable.  (R&R at 6-8 [Doc. No. 35].)   Specifically, Chief Magistrate Judge Boylan found that Smith was not subjected to overly suggestive identification procedures, the identification was made by a victim who had observed the perpetrators during the robbery only some minutes before making the show-up identification, and the victim was

highly certain of his identification, after having been advised that the suspect might not be one of the persons involved in the robbery.  (Id. at 6-7.)  Relying on United States v. Jones, the magistrate judge found that "[e]ven if the court were to assume that the pretrial confrontation in this instance was impermissibly suggestive, the court concludes that the identification was not made under circumstances that would create a substantial likelihood of misidentification and is unreliable on that ground."  (Id. at 7) (citing United States v. Jones, 535 F.3d 886, 891 (8th Cir. 2008)).  Defendant objects, arguing that one-man show-ups are inherently suggestive.  (Objections at 2-3 [Doc. No. 36]) (citing, e.g. Manson v. Brathwaite, 432 U.S. 98, 134 (1977); United States v. Sanders, 547 F.2d 1037, 1040 (8th Cir. 1976); United States v. Henderson, 719 F.2d 934, 936 (8th Cir. 1983)).  He further argues that the identification was unreliable, contending that the victim had only a short opportunity to view the robber during the robbery and likely had only a limited degree of attention, and that the prior description given by the victim was not specific.  (Id. at 5-6.)

The admission of a crime victim's identification of a defendant based on a pretrial confrontation between the witness and the suspect violates the Due Process Clause of the Fifth Amendment if it is both impermissibly suggestive and unreliable.  United States v. King, 148 F.3d 968, 970 (8th Cir. 1998) (emphasis in original).  In Neil v. Biggers, 409 U.S. 188, 198 (1972) the Supreme Court stated that "[i]t is the likelihood of misidentification which violates a defendant's right to due process."  To determine whether an out-of-court identification procedure is violative of due process, courts conduct a two-step inquiry, first determining whether the identification was unnecessary and suggestive.  Perry v. New Hampshire, __ U.S. __, 132 S. Ct. 716, 724 (2012).  Even if the identification was suggestive, however, under the second step, "if

the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." Id. at 720.

In Jones, the Eighth Circuit noted the factors by which courts evaluate the reliability of the circumstances of out-of-court identifications:

> "A crime victim's identification of the defendant is admissible unless it is based upon a pretrial confrontation between the witness and the suspect that is both impermissibly suggestive and unreliable." United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006). "An identification is unreliable if its circumstances create a very substantial likelihood of irreparable misidentification." Id. at 910. The relevant circumstances include "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation.'" United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (quoting Manson, 432 U.S. at 98).

Jones, 535 F.3d at 891.

Defendant argues that the show-up identification procedure was inherently suggestive, in that he was the sole suspect presented to the victim, that the victim knew, prior to the show-up, that Smith had fled the police and that a gun had been recovered, and that Smith was presented to the victim in handcuffs, under a spotlight. (Objections at 4 [Doc. No. 36]) (citing T. 20-21; 44-45, Defense Ex. 3, Minneapolis Dispatch Recording.) In Martinez, the defendant was handcuffed, driven to the scene of the bank robbery in a police car, and police officers were present when the victim identified him as the bank robber in question. 462 F.3d at 906, 911. The Eighth Circuit found that this identification procedure was not unduly suggestive, although even if it was, the court was satisfied that there was little likelihood of irreparable misidentification, because the bank teller's identification was reliable. Id. at 911. Given the teller's direct dealing with the suspect, the opportunity to observe him, the certainty of the identification, and the short

time between the robbery and the identification, the Eighth Circuit affirmed the admission at trial of the show-up identification.  In Jones, however, the Eighth Circuit assumed, without deciding, that the defendant's identification was suggestive, where the defendant was taken to a bank in handcuffs, surrounded by law enforcement, and was identified as the bank robber by two tellers. 535 F.3d at 891.  Nevertheless, the court found the identification procedure was admissible based on the fact that there was very little likelihood of misidentification by the bank tellers.  Id. at 891-92.  The tellers had provided an accurate description of the bank robber, which matched the defendant, they had time to observe the bank robber, and they were confident of their identification, which occurred less than an hour after the crime.  Id.

Here, while the magistrate judge found that Defendant was not subjected to overly suggestive identification procedures, the magistrate judge also found that even if the Court were to assume that the identification procedure was impermissibly suggestive, it was sufficiently reliable to avoid the likelihood of misidentification.  This Court agrees with the magistrate judge that the identification was not impermissibly suggestive, and, even assuming that it was, based on the totality of the circumstances, there is very little likelihood of misidentification by the victim.  Applying the various factors noted by the court in Jones, the victim was in close proximity to two of the three men who robbed him.  After the robbery occurred, he provided a description of the two perpetrators who were in close contact with him.  Once the defendant was apprehended, the victim was informed that the suspect who would be presented to him was not necessarily one of the individuals involved in the robbery, and the victim stated that he would not make an identification unless he was certain.  Upon seeing Defendant, the victim demonstrated the certainty of his identification by stating, "that's the guy, that's the guy that

took my money." The show-up identification occurred approximately thirty minutes after the crime occurred. In addition, the victim's prior description of the suspect was generally accurate. For all of these reasons, the Court finds that the totality of circumstances does not create a "very substantial likelihood of irreparable misidentification" given the reliability of the victim's identification. Brodnicki v. City of Omaha, 75 F.3d 1261, 1265 (8th Cir. 1996).

In addition, Defendant further objects to the admission of the out-of-court identification, and the admissibility of the hearing witness' testimony, arguing that the testifying witness, Special Agent Portel, was not present at the scene, and was therefore unable to establish a sufficient factual basis for the magistrate judge to conclude at the suppression hearing that the show-up identification was not unduly suggestive. Defendant argues that in Martinez, 462 F.3d at 911, and United States v. Pickar, 616 F.3d 821, 828 (8th Cir. 2010), the officers who conducted the show-up identifications testified at the suppression hearings and were able to establish a sufficient factual basis for the court to conclude that the process was not unduly suggestive. (Objections at 8 [Doc. No. 36].) In the opinions to which Defendant refers, the Eighth Circuit concluded that the show-up procedures were not impermissibly suggestive, but, in reaching that conclusion, the court did not address the presence or non-presence of the on-the-scene officers at the suppression hearings in its analyses. Martinez, 462 F.3d at 911; Pickar, 616 F.3d at 828. It may be the case that the officers in question testified at the suppression hearings, but the court found that even if the show-up identifications were impermissibly suggestive, the show-up evidence was reliable under the totality of the circumstances. Id. Here, the Court has likewise found that even if the identification was suggestive, it was otherwise reliable. For the reasons set forth herein, the Court finds that the show-up identification evidence is admissible

and Defendant's Motion to Suppress Identification Evidence is therefore denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 18] is **DENIED**;

2.      Defendant's Motion to Suppress Statements, Admissions and Answers [Doc. No. 19] is **DENIED**;

3.      Defendant's Motion to Suppress Eyewitness Identifications [Doc. No. 20] is **DENIED**; and

4.      The Report & Recommendation [Doc. No. 35] is **ADOPTED**.

Dated:   November 13, 2012

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge